*37*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

JAN 1 1 2001

Michael N. Milby
Clerk of Court

| | |
|---|---|
| GUADALUPE LOPEZ, )<br>    Plaintiff, )<br>)<br>v. )<br>)<br>CAMERON COUNTY, TEXAS; ALEX )<br>PEREZ, individually and in his official )<br>capacity as Sheriff; JOE ELIZARDI, )<br>individually and in his official capacity )<br>as Chief Jailer; and, ANTONIO VALLEJO, )<br>individually and in his official capacity )<br>as a paid informant, )<br>    Defendants. ) | CAUSE NO. B-95-69<br><br>JURY DEMANDED |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

COMES NOW the Defendants and move the Court for summary judgment pursuant to

Rule 56(b) of the Federal Rules of Civil Procedure on the ground that there is no genuine issue of

material fact and that Defendants are entitled to judgment as a matter of law as to the issue of

whether the County or the individual Defendants are liable for Fourteenth Amendment,

substantive due process claims for gross and outrageous conduct or for state law claim for

intentional inflection of emotional distress.  In support thereof Defendants show the Court:

### HISTORY OF THIS CASE

On June 1, 1995, Defendants Cameron County, Alex Perez, and Joe Elizardi filed their

Rule 12(b)(6) Motion To Dismiss.  On August 3, 1995, an initial pretrial was held.  Plaintiff had

not responded to Defendants Motion To Dismiss and was given until August 25, 1995 to amend

his complaint.  No amended complaint was filed so on August 29, 1995, Defendants filed a

motion to reurge their Motion To Dismiss.  In lieu of amending on September 18, 1995, Plaintiff

1

filed a Response to Defendants' Motion To Dismiss.  On September 20, 1995, a second initial pretrial conference was held in which the Plaintiff announced the dismissal of his claims for wrongful termination, state and federal, and for slander.  These claims were dismissed with prejudice by Nunc Pro Tunc Order Of Dismissal on November 9th, 1995,

Plaintiff ask for and was given until October 2, 1995, (three times extended and timely filed on October 11) to file a supplemental response to Defendants Motion To Dismiss.  Plaintiff's Supplemental Response To Defendants' Motion To Dismiss attempts to validate Plaintiff's suit by arguing Plaintiff has a substantive due process claim to be free from gross and outrageous governmental conduct.

On October 17th, 1995, Defendants filed a Reply to Plaintiff's Response To Motion To Dismiss.  It replies to Plaintiff's Fourteenth Amendment substantive due process claim raised in Plaintiff's Response filed October 11th, 1995.

Subsequently, on February 10, 1998, Plaintiff filed his First Amended Original Complaint, which is Plaintiff's live pleading.  In it Plaintiff pleads a Fourteenth Amendment, substantive due process cause of action to be free from gross and outrageous governmental conduct and governmental abuse (paragraphs 20 through 22 of the amended complaint), and, pleads a state cause of action for intentional infliction of emotional distress (paragraphs 24 and 25 of the amended complaint).

On March 25, 1998, Defendants filed an Answer and Rule 12(b)(6) Plea.

Defendants now file this Motion for Summary Judgment.

### Summary Judgment Standard

Rule 56(b), Federal Rules of Civil Procedure provides that a defending party may, at any

2

CutePDF - www.fesito.com

time, move, with or without supporting affidavits for summary judgment in the party's favor. Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

A Party seeking summary judgment bears the initial burden of informing the court of the basis for his motion, and identifying those portions of the record which he believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrell,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2553, 91 L.E.2d 265 (1986). Where a party will have the burden of proof on an essential element of his case at trial and does not, after adequate time for discovery, make a showing sufficient to establish the existence of that element, there can be no genuine issue as to any material fact since a complete failure of proof concerning an essential element of the non-movant's case necessarily renders all other facts immaterial. *Id.,* at 322-323, 106 S.Ct. at 2552-2553.

The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-248, 106 S.Ct 2505, 91 L.Ed.2d 202 (1986). The dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* Where the record as a whole cannot lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *Matsushita Electric Industrial Co. v. Zenith radio Corp.,* 475 U.S. 560, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

3

## OFFICIAL CAPACITY

Plaintiff has sued the individual County Defendants in their official capacity as officers or employees of Cameron County. In *Familias Unidas v. Briscoe,* 619 F.2d 391, 403 (5th Cir. 1980) the Court stated:

> "Actions for damages in [a defendant's] official capacity are, in essence, actions against the governmental entity of which the officer is an agent. *Monell v. Department of Social Services,* 436 U.S. 658, 690 n.e. 55, 98 S.Ct. 2018, 2036 n. 55, 56 L.Ed.2d 611 (1978)..."

Because Cameron County is a named Defendant in this case, Plaintiff's claims against the individual Defendants in their official capacity merely constitutes duplicative claims against the County of Cameron and should be dismissed.

## FOURTEENTH AMENDMENT SUBSTANTIVE DUE PROCESS CLAIM

Under the facts plead in this case Plaintiff was arrested, indicted and tried to a jury. As plead by Plaintiff in Paragraph 12 of the Complaint he was "...forced to face criminal charges." This clearly constitutes a seizure for purposes of the Fourth Amendment. *Terry v. Ohio,* 392 U.S. 1, 19, n. 16, 20 L.Ed.2d 889, 88 S.Ct. 1868 (1968) and *Brower v. County Of Inyo,* 489 U.S. 593, 596, 103 L.Ed.2d 628, 635, 109 S.Ct. 1378 (1989); see also, *Albright v. Oliver,* 510 U.S. 266, 127 L.Ed.2d 114, 114 S.Ct. 807 (1994).   He was also fired, but the wrongful termination claim, state and federal, have been dropped. (See, Nunc Pro Tunc Order of Dismissal.)  Plaintiff has made no Fourth Amendment claim, probably because he was indicted after arrest; see, *Taylor v. Gregg,* 36 F.3d 453, 456 (5th Cir. 1994); instead, Plaintiff rests his claim on the Fourteenth Amendment under substantive due process.  However, under the facts plead either Plaintiff was properly arrested upon probable cause or he was wrongfully arrested without probable cause; an

4

issue laid to rest by subsequent indictment. *Taylor v. Gregg, supra,* at 456. Plaintiff attempts to circumvent a proper Fourth Amendment arrest and indictment by claiming that the conduct which gave rise to Plaintiff's arrest was outrageous governmental conduct in violation of Fourteenth Amendment substantive due process.

Twice the U. S. Supreme Court has struck down attempts to do an end run around the Fourth Amendment when the facts indicated a Fourth Amendment seizure.

In *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443, (1989), Graham claimed an officer had used excessive force while he was detained during an investigative stop. The Court stated at 388:

> "This case requires us to decide what constitutional standard governs a free citizen's claim that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other "seizure" of his person. We hold that such claims are properly analyzed under the Fourth Amendment's "objective reasonableness" standard, rather than under a substantive due process standard."

In *Albright v. Oliver, supra,* the plaintiff, Albright, surrendered himself on an outstanding warrant charging him with the sale of a substance which looked like an illegal drug. On defendant Oliver's testimony the court found probable cause to bind Albright over for trial. The court later dismissed the action on the ground that the charge did not state an offense under state law. Albright filed a Section 1983 action alleging violation of his "substantive due process" rights guaranteed by the Fourteenth Amendment. The Court in *Albright,* held that "...substantive due process, with its 'scarce and open-ended' 'guidepost,' [citation omitted] can afford him [Albright] no relief." *Id.,* at 275. The court reasoned that the lawfulness of a seizure under the Fourth Amendment must be brought under a Fourth Amendment claim and not under a Fourteenth Amendment substantive due process claim. *Id.,* pages 271-75. For instance at page 273 the court

5

states:

> "Where a particular amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.' [Citation omitted.]"

The court held that substantive due process could not be used by Plaintiff Albright, which is exactly what the Plaintiff is the case at bar is trying to do.

The Plaintiff has no claim for outrageous conduct under substantive due process of the Fourteenth Amendment.

## INTENTIONAL TORTS -- STATE LAW CLAIMS

There is no waiver of sovereign immunity under the Texas Tort Claims Act for intentional torts. V.T.C.A., C.P.&R Code, Section 101.057(2). In, Gillum v. City of Kerrville, supra, at 123, the Fifth Circuit sustained the district court's dismissal of a police officer's suit for defamation and intentional infliction of emotional distress, among other things stating:

> "The district court correctly observed that Section 101.057 of the Texas Civil Practices and Remedies Code provides that any limited waiver of sovereign immunity does not apply where the claim arises out of an intentional tort. [Citation omitted.] This provision shields municipalities from suits arising out of intentional torts committed by governmental employees, [citation omitted] and should be liberally construed to accomplish this objective. [Citation omitted.]"

There is no waiver of County's sovereign immunity.

## TORT CLAIMS ACT NOTICE

Plaintiff cannot recover under the Texas tort Claims Act for the reason there was no notice alleged or given within six months after the incident giving rise to this claim in accordance with V.T.C.A., C.P.& R. Code, Section 101.101, and there has been no actual notice within six months after the incident giving knowledge to Cameron County of (1) an injury suffered by

6

Plaintiff, (2) Cameron County's fault producing or contributing to such injury, if any, or (3) the identity of the parties involved as required by *Cathey v. Booth,* 900 S.W.2d 339 (Tex. 1995).

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

"[W]e hold that a claim for intentional infliction of emotional distress cannot be maintained when the risk that emotional distress will result is merely incidental to the commission of some other tort." *Standard Fruit And Vegetable Co. Inc. v. Johnson,* 985 S.W.2d 62, 68 (Tex. 1998). Without question there is a risk that emotional distress will result incidental to an arrest.

Plaintiff was arrested on probable cause. See attached Affidavit of Joe Elizardi. A jury acquittal does not destroy probable cause. For an arrest to be false it must be without probable cause. See, *Fields v. City Of South Houston, Texas,* 922 F.2d 1183, 1189 (5th Cir. 1991).

Plaintiff, therefore, has no false arrest claim. If this Court were to hold that a person is subject to a claim of intentional infliction of emotion distress when the stress is incidental to an arrest on probable cause, than every time there is an arrest, a tort claim would exist against the officer making the arrest. That is either for false arrest if without probable cause or for intentional infliction of emotional distress if with probable cause.

## SUPERVISORY LIABILITY

As to Defendant Alex Perez there are no factual allegations supporting relief on any possible theory. First, assuming the factual allegations in the Original Complaint establish a cause of action against anybody, which is not admitted by County or Perez, there are no factual allegations of omission or commission by Perez. There is not even a hint of what Perez did or did not do to support relief to Plaintiff from Perez on any theory.

Former Sheriff Perez cannot be held liable vicariously. In *Mouille v. City Of Live Oaks,*

*Texas*, 977 F.2d 924, 929 (5th Cir. 1992) the Court stated:

> "Well settled Section 1983 jurisprudence establishes that supervisory officials cannot be held vicariously liable for their subordinates' actions. [Citations omitted.] Supervisory officials may be held liable only if: (i) they affirmatively participate in acts that cause constitutional deprivation; or (ii) implement unconstitutional policies that causally result in plaintiff's injury. [Citations omitted.]"

There is no evidence that Perez affirmatively participated or implemented an unconstitutional

policy.  See, attached affidavit, paragraphs 8 & 9.

WHEREFORE, Defendants pray this Court grant their Motion for Summary Judgment

and dismiss this case with prejudice, and grant Defendants such other relief to which they may be

entitled.

Respectfully submitted,

CIVIL LEGAL DEPARTMENT
COMMISSIONERS COURT
964 East Harrison Street
Brownsville, Texas  78520
Telephone: 956/550-1345
Facsimile:  956/550-1348

BY: _____
Richard O. Burst
Attorney In Charge
Texas State Bar #00785586
S.D. No. 15515

Dylbia L. Jefferies
Of Counsel
Texas State Bar #00786516
S.D. No. 17065

## CERTIFICATE OF SERVICE

I, Richard O. Burst do hereby certify that a true and correct copy of the foregoing

8

Motion has been mailed to Plaintiff's Attorney, Erik R. Sunde, 301 W. Clay, Houston, Texas 77019, on this _____ of January, 2000.

Richard Q. Burst

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| GUADALUPE LOPEZ, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. B-95-69 |
| | ) | |
| CAMERON COUNTY, TEXAS; ALEX | ) | JURY DEMANDED |
| PEREZ, individually and in his official | ) | |
| capacity as Sheriff; JOE ELIZARDI, | ) | |
| individually and in his official capacity | ) | |
| as Chief Jailer; and, ANTONIO VALLEJO, | ) | |
| individually and in his official capacity | ) | |
| as a paid informant, | ) | |
|     Defendants. | ) | |

## AFFIDAVIT OF JOE ELIZARDI

On this day, Joe Elizardi appeared before me, the undersigned notary public. After I administered an oath to him, upon his oath, he said:

1.    "My name is Joe Elizardi. At the time relevant to this law suit I was the Chief Jailer for the Cameron County Sheriff's Office. I am competent to make this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct.

2.    I arrested Benito De La Cruz, Plaintiff, on probable cause.

3.    I submitted a case file under cover of a Felony Submission Form to the Cameron County (Criminal District) Attorney's Office. See, attached case file.

4.    The Cameron County (Criminal District) Attorney's Office presented this case to a grand jury. The grand jury indicted Plaintiff for the crime for which he was arrested.

5.    The case was tried to a jury and Plaintiff was acquitted.

6.    Attached is a copy of the case file I submitted to the Cameron County (Criminal District) Attorney' Office. The "case file" is a public record or report filed in the Cameron County Sheriff's Office were such case files are kept.

7.    At the time Plaintiff was booked into the county jail, I intended to arrest Plaintiff based on probable cause that he had committed the crime that he knowingly took a controlled

1

substance, marijuana, into a county jail. This is the crime for which he was subsequently indicted, tried and acquitted.

8.    Alex Perez was sheriff of Cameron County at the time of Plaintiff's arrest is this case. But, Alex Perez was not present during and took no action with regard to Plaintiff's arrest.

9.    At the time of Plaintiff's arrest I was licensed by the State of Texas as a peace officer. Prior to being placed in charge of the jail I had been an investigator in the sheriff's Office for approximately four years. I had received both formal and on the job training as an investigator while employed by the Sheriff's Office

Further Affiant sayeth not.

Joe Elizardi

        SWORN TO and SUBSCRIBED before me by Joe Elizardi on this 10th day of January, 2001.

My commission expires:    4-26-01

Notary Public in and for
the State of Texas

GRACIE L PAREDES
NOTARY PUBLIC
State of Texas
Comm. Exp. 04/26/01

2

Felony Submission For

Defendant(s)' name(s) <u>GUADALUPE C. LOPEZ   06/02/65</u>
and D.O.B.

_____

_____

Date of arrest: <u>MAY 11, 1993</u>      Arresting Agency <u>CAMERON CO. S. O.</u>

Charge(s): <u>INTRODUCTION OF A CONTROLLED SUBSTANCE INTO A PENAL INSTITUTION</u>

J.P. or Municipal Ct. and number <u>N/A</u>

| Case File Checklist | | | | | Yes | No | N/A | B. Physical and Scientific Evidence |
|---|---|---|---|---|---|---|---|---|
| Yes | No | N/A | A. Statements In File | | | | | |
| ✓ | | | 1. Statement of victim | | ✓ | | | 1. Physical evidence recovered |
| ✓ | | | 2. Statements of all witnesses that were identified | | ✓ | | | 2. Retained by agency |
| | | | | | ✓ | | | 3. Submitted to lab |
| ✓ | | | 3. Confession | | ✓ | | | 4. Submission form in file |
| | | | 4. Investigative report from main investigating officer | | ✓ | | | 5. Lab report in file |
| ✓ | | | 5. All offense and arrest reports | | | | | 6. Photographs taken |
| | | | | | | | | 7. Photos in file |
| | | | If No for any of above, please explain | | | | | 8. Diagrams made |
| | | | | | | | | 9. Diagrams in file |
| | | | | | | | | 10. Video or audio recordings made |
| | | | | | | | | 11. Video or audio recordings in file |
| | | | | | | | | 12. Transcript of audio recordings in file |
| | | | | | | | | 13. Medical examination |
| | | | | | | | | 14. Results of medical examination in file |
| Yes | No | | B. Criminal Record | | | | | 15. Autopsy |
| | | | | | | | | 16. Autopsy report in file |
| | | | 1. NCIC/TCIC and DL check in file | | | | | 17. Blood alcohol test given |
| | ✓ | | 2. Does Defendant have priors in Agency records? | | | | | 18. Results of Blood Alcohol test in file |
| ✓ | | | 3. Fingerprint card submitted to Austin | | | | | 19. Search or arrest warrants |
| | | | | | | | | 20. Copies of Warrants and Returns in file |

Submitting Officer: <u>JOE ELIZARDO</u>

Submitted to (D.A. Staff person): _____

Date Submitted: _____   NOTE: ALL felony case files must be submitted no later than sixty (60) days after arrest. Problems at that time can be resolved by consultation with our office.

| CAMERON COUNTY SHERIFF DEPARTMENT CRIMINAL LAW ENFORCEMENT DIVISION **CASE REPORT** | FILE NUMBER 93-4804 | |
|---|---|---|
| | IDENTIFIER CRIMINAL | PROGRAM CODE N/A |

**FENDANTS**

UADALUPE C. LOPEZ  06/02/65
54 HORTENCIA STREET
ROWNSVILLE, TEXAS 78520

**VIOLATIONS**

INTRODUCTION OF A CONTROLLED SUBSTANCE INTO A PENAL INSTITUTION

**COUNTY**

CAMERON

**REPORTED BY:**  STATE OF TEXAS   **DATE**

**NOPSIS**

ON TUESDAY MAY 11, 1993 DETENTION OFFICER GUADALUPE C. LOPEZ ARRANGED TO HAVE SOME ARCOTICS HIDDEN IN A CIGARETTE PACK. MR LOPEZ THEN HAD THE PACK DELIVERED TO HIM, WHICH N TURN HE WAS TO DELIVER IT TO AN INMATE IN THE COUNTY JAIL. SURVEILLANCE WAS SET AND MR. OPEZ WAS SUBSEQUENTLY CAUGHT AND CHARGED.

**LIST AND DESCRIPTION OF ITEMS IN CASE FILE:**

. CAMERON COUNTY SHERIFF'S DEPARTMENT CASE REPORT AND INVESTIGATIVE REPORT DONE BY CHIEF JOE ELIZARDI.

. STATEMENT OF INVESTIGATOR JOE SAENZ, OBTAINED BY CHIEF ELIZARDI.

. STATEMENT OF WITNESS/INFORMANT ANTONIO VALLEJO JR.

. MIRANDA WARNINGS GIVEN TO THE ACCUSED BEFORE INTERVIEW.

. VOLUNTARY CONFESSION OF THE ACCUSED OBTAINED BY CHIEF ELIZARDI.

. CAMERON COUNTY SHERIFF'S DEPT. OFFENSE REPORT

. CAMERON COUNTY SHERIFF'S DEPT. ARREST REPORT

. NCIC/TCIC AND DRIVERS LICENSE CHECK ON ACCUSED.

. LOCAL AGENCY CHECK ON ACCUSED.

. FINGERPRINT CARD OF ACCUSED.

. MAGISTRATES WARNING GIVEN TO THE ACCUSED NY J.P. TORRES

. CAMERON CO. SHERIFF'S DEPT. EVIDENCE TAG.

. COPY OF CIGARETTE PACK AND SUBSTANCE INTRODUCED BY ACCUSED.

. LAB SUBMISSION FORM.

. LAB REPORT FROM D.P.S.

**GNATURE (AGENT)**  OE ELIZARDI   **APPROVED (NAMLD TITLE)**

# REPORT OF INVESTIGATION

| FILE TITLE | FILE NUMBER |
|---|---|
| INTRO. OF CONT. SUBS. INTO A PENAL INST. TX. HEALTH AND SAFETY CODE | 93-4804 |

| IDENTIFIER | PROGRAM CODE |
|---|---|
| CRIMINAL | N/A |

☐ active   ☐ CLOSED   ☐ REQUESTED ACTION COMPLETED
☐ ACTION REQUESTED FROM   STATE OF TEXAS

OTHER OFFICERS
INV. JOE SAENZ

CROSS RELATED FILES
FILE ☐ ☐ ☐ ☐ ☐ ☐ ☐

BY JOE ELIZARDI
CAMERON COUNTY SHERIFF'S DEPT.

AT 954 E. HARRISON STREET
BROWNSVILLE, TX.

DATE

REPORT RE

## INVESTIGATIVE REPORT

MAY 11, 1993

1. AT APPROXIMATELY 12:30 P/M, I RECEIVED A PHONE CALL AT MY OFFICE FROM AN INFROMANT BY NAME OF ANTONIO VALLEJO JR. VALLEJO ASKED ME IF I WAS INTERESTED IN BUSTING A GUARD THAT WAS GOING TO DELIVER SOME DOPE TO THE JAIL. I SAID YES, THAT I WAS INTERESTED AND I ASKED VALLEJO TO COME BY OFFICE SO WE COULD TALK. VALLEJO HAD ASSISTED ME IN A PRIOR ARREST OF A DETENTION OFFICER, SO I FIGURED HE WAS ON THE LEVEL WITH THIS NEW INFORMATION.

2. AT APPROXIMATELY 1:00 P/M, VALLEJO ARRIVED AT MY OFFICE AND HE BAGAN TO TELL ME HOW A GUARD BY THE NAME OF GUADALUPE LOPEZ APPROACHED HIM AND ASKED HIM TO GET SOME DOPE. VALLEJO SAID THAT LOPEZ WANTED A"PACA CON MOTA" FOR AN INMATE, (PACK OF CIGARETTES W/ DOPE). VALLEJO SAID THAT HE WAS TO MEET LOPEZ LATER ON AT NIGHT TO FINISH SETTING UP THE DEAL. AT THIS TIME VALLEJO ASKED IF WE HAD SOME DOPE SO HE COULD SET IT UP. AT THIS TIME I EXPLAINED THE DEAL TO CHIEF TAPIA SO HE KNEW WHAT I WAS GOING TO DO. I TOOK SOME MARIJUANA AND HANDED IT TO VALLEJO. HE TOOK A NEW PACK OF MARLBORO CIGARETTES AND OPENED IT. HE FIXED THE PACK AND PUT THE MARIJUANA INSIDE THE PACK. AFTER THIS WAS DONE, I TOOK THE PACK AND MARKED IT. I PUT A SMALL LINE UNDER THE WORD CIGARETTE. I THEN RETURNED THE PACK TO VALLEJO. HE THEN AGREED TO CALL ME WITH FURTHER DETAILS. VALLEJO THEN LEFT MY OFFICE. VALLEJO CALLED LATER AND SAID IT WAS SET FOR 9:00 P/M AT THE CO.JAIL

3. AT APPROXIMATELY 6:00 P/M, I CALLED INVESTIGATOR JOE SAENZ AND I ASKED HIM FOR HELP WITH THE SURVEILLANCE. INV. SAENZ AGREED, AND I TOLD HIM TO MEET ME AT THE SHERIFF'S OFFICE AT ABOUT 7:30 P/M.

| | |
|---|---|
| DISTRICT | SIGNATURE (PREPARER) |
| CAMERON | |
| AREA | JOE ELIZARDI |
| BROWNSVILLE | APPROVED (NAME & TITLE)   DATE |
| OTHER | |
| COUNTY JAIL | |
| CLE 1 | |

CRIMINAL LAW ENFORCEMENT DIVISION
CAMERON COUNTY SHERIFF DEPARTMENT

| | DATE | | |
|---|---|---|---|
| CONTINUATION: | | PAGE | OF |

| FILE TITLE | FILE NUMBER | |
|---|---|---|
| INTRO. OF CONT. SUBS. INTO A PENAL INST. | 93-4804 | |
| | IDENTIFIER | PROGRAM CODE |
| | CRIMINAL | N/A |

4. AT ABOUT 7:45 P/M, I PICKED UP INVESTIGATOR SAENZ AT THE SHERIFF'S DEPT. WE LEFT AND I TOLD HIM WHAT I HAD GOING ON. I DIDN'T TELL HIM THE GUARDS NAME AT THIS TIME.

5. AT APPROXIMATELY 9:00 P/M, INV. SAENZ AND I ARRIVED AND PARKED BEHIND THE CO JAIL. WHILE THERE I TOLD HIM THAT THE GUARD WAS DRIVING A BLUE CHEVY IMPALA.

6. AT APPROX. 9:15 P/M, VALLEJO ARRIVED AND TOLD ME THAT EVERYTHING WAS SET TO GO. AT THIS VALLEJO SAID HE HAD MET WITH LOPEZ AND THAT LOPEZ WAS GOING TO ARRIVE A BIT LATE, BUT THAT HE WAS GOING TO ARRIVE. I THEN TOLD VALLEJO THAT I WOULD BE WATCHING HIM WITH SOME FIELD GLASSES (BINOCULARS), AND THAT IF THE EXCHANGE WAS DONE I WANTED HIM TO SHAKE LOPEZ'S HAND. AND THEN I WANTED HIM TO WALK AWAY AND BEND DOWN AS IF TO TIE HIS SHOE. IF HE DIDN'T DO THIS THEN NO DEAL WAS MADE. VALLEJO AGREED AND LEFT TO WAIT FOR LOPEZ.

7. AT APPROX. 9:45 P/M, LOPEZ ARRIVED IN THE BLUE CHEVY. HE PARKED AND I OBSERVED VALLEJO APPROACH LOPEZ. THEY SPOKE FOR A BIT THEN I SAW VALLEJO HAND LOPEZ SOMETHING AND LOPEZ PUT THE ITEM IN HIS SHIRT POCKET. AT THIS TIME VALLEJO SHOOK LOPEZ'S HAND AND WALKED AWAY. THEN VALLEJO BENT DOWN TO TIE HIS SHOE. AT THIS TIME INV. SAENZ AND I RUSHED TO THE JAIL AND WENT INTO THE JAIL THROUGH THE DOOR OPPOSITE OF WHERE LOPEZ WAS ENTERING.

8. AS THE DOOR WAS BEING OPENED FOR US, LOPEZ WAS ALREADY INSIDE THE JAIL. LOPEZ TURNED TOWARDS THE DOOR WHERE WE WERE AT AND HE SAW US. HE IMMEDIATELY WENT TO THE KITCHEN. AS THE DOOR OPENED WE WENT IN AND INV. SAENZ FOLLOWED LOPEZ INTO THE KITCHEN. INV. SAENZ SAW LOPEZ THROW SOMETHING INTO THE TRASH CAN. AT THIS TIME LOPEZ WALKED OUT OF THE KITCHEN AND TOWARDS THE BRIEFING AREA. I FOLLOWED LOPEZ AND WAITED FOR INV. SAENZ TO COME BACK. AFTER A FEW MINUTES, INV. SAENZ CAME AND TOLD ME HE HAD FOUND THE PACK OF CIGARETTES. INV. SAENZ IMMEDIATELY GAVE ME THE PACK OF CIGARETTES. HE THEN LEFT TO THE BOOKING AREA OF THE JAIL. AFTER THE BRIEFING I TOLD MR. LOPEZ THAT I WANTED TO SPEAK TO HIM. HE AGREED, AND EVERYONE ELSE LEFT. AFTER WE WERE ALONE, I SHOWED THE PACK OF CIGARETTES TO MR. LOPEZ. I ASKED HIM IF HE RECOGNIZED THEM, AND HE SAID YES THAT A GUY HAD JUST GIVEN IT TO HIM AND HE TOOK IT. AT THIS TIME I CALLED SGT. JOE OLVERA AND I ASKED HIM TO BE MY WITNESS. I TOOK THE PACK OF CIGARETTES AND OPENED IT IN THE PRESENCE OF LOPEZ AND SGT. OLVERA. FROM WITHIN THE PACK I TOOK A SMALL PLASTIC BAG WHICH CONTAINED MARIJUANA. I SHOWED IT TO LOPEZ AND HE FREAKED OUT. HE IMMEDIATELY DENIED ANY KNOWLEDGE OF IT. AT THIS TIME I TOOK HIM TO THE FRONT OFFICE AND I READ HIM HIS RIGHTS. INV. SAENZ WAS PRESENT DURING THIS. AT THIS TIME I ASKED LOPEZ IF HE WANTED TO GIVE ME A VOLUNTARY CONFESSION AND HE SAID YES. I OBTAINED THE CONFESSION AND HE SIGNED IT IN THE PRESENCE OF INV. SANEZ. AFTER THE CONFESSION WAS OBTAINED, I TOOK LOPEZ BACK INTO THE JAIL AND I HAD HIM BOOKED.

MAY 12, 1993

9. ON THE ABOVE DATE LOPEZ WAS TAKEN BEFORE J.P. TORRES AND ARRAIGNED ON THE AFORESAID CHARGE. BOND WAS SET AT $10,000 DOLLARS. LATER DURING THE DAY HE BONDED OUT.

**CONTINUATION:**

DATE               PAGE     OF

| FILE TITLE | FILE NUMBER | |
|---|---|---|
| INTRO. OF CONT. SUBS. INTO A PENAL INST. | 93-4804 | |
| | IDENTIFIER | PROGRAM CODE |
| | CRIMINAL | N/A |

10. DURING THE AFTERNOON VALLEJO CAME BY THE OFFICE TO GIVE HIS STATEMENT. I OBTAINED HIS STATEMENT AND TOLD HIM I WAS GOING TO GET IT TYPED. HE SAID HE WOULD RETURN LATER DURING THE DAY TO SIGN IT NAD HE NEVER RETURNED. TO THIS DAY I HAVE NOT SEEN NOR HEARD FROM MR. VALLEJO. I HAVE LOOKED FOR HIM AT THE ADDRESS HE GAVE BUT HE NO LONGER LIVES AT SAID ADDRESS. I PLACED A LOOUT FOR HIM BUT TO NO AVAIL.

**MAY 13, 1993**

11. AT THIS TIME I OBTAINED THE NEEDED INFORMATION FOR THE CASE FILE AND PREPARED THE CASE FOR PRESENTATION TO THE D.A.'S OFFICE.

CRIMINAL LAW ENFORCEMENT DIVISION
CAMERON COUNTY SHERIFF DEPARTMENT